**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
info@gauntlettlaw.com
Eric D. Mason (SBN 259233)
edm@gauntlettlaw.com
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050

Attorneys for Plaintiffs
AD.COM INTERACTIVE MEDIA, INC.,
CHEAP STUFF, INC., LOCAL PAGES, INC.,
AVI BIBI, and DANNY BIBI

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AD.COM INTERACTIVE MEDIA, INC., a California corp.; CHEAP STUFF, INC., a California corp.; LOCAL PAGES, INC., a California corp.; AVI N. BIBI, an individual, and DANNY E. BIBI, an individual,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>SCOTTSDALE INSURANCE CO., an Ohio Insurance Company,<br><br>　　　　　　　Defendant. | Case No.: 18-cv-6609<br><br>**COMPLAINT FOR:**<br><br>**(1)　DECLARATORY RELIEF;**<br><br>**(2)　BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** |

In this insurance coverage suit, Plaintiffs Ad.com Interactive Media, Inc. ("Ad.com"), Cheap Stuff, Inc. ("Cheap Stuff"), Local Pages, Inc. ("Local Pages"), Avi N. Bibi ("Avi Bibi"), and Danny E. Bibi ("Danny Bibi") (collectively, the "Plaintiffs") seek **(i)** a declaratory judgment that Defendant Scottsdale Insurance Co. ("Scottsdale" or "Defendant") has a duty to defend Plaintiffs in the underlying action styled as *Kahn v. Ad.com Interactive Media, Inc., et al.*, Superior Court of California, County of Los Angeles, Case No. BC693661 (the "Kahn Action"); **(ii)** Scottsdale must reimburse Plaintiffs for all the defense expenses they have incurred in the Kahn Action, plus prejudgment interest at the applicable rate from the date of invoice; and **(iii)** Scottsdale has breached its duty of good faith and fair dealing to Plaintiffs.

## THE PARTIES

1. Plaintiff Ad.com is a California corporation with its principal place of business in Los Angeles, California.

2. Plaintiff Cheap Stuff is a California corporation with its principal place of business in Los Angeles, California.

3. Plaintiff Local Pages is a California corporation with its principal place of business in Los Angeles, California.

4. Plaintiff Avi Bibi is an individual who is a resident of the state of California and who resides and is domiciled in Los Angeles, California.

5. Plaintiff Danny Bibi is an individual who is a resident of the state of California and who resides and is domiciled in Los Angeles, California.

6. On information and belief, Defendant Scottsdale is, and at all times herein mentioned was, an insurance company organized and existing under the laws of the state of Ohio and with its principal place of business in Scottsdale, Arizona.

7. On information and belief, Scottsdale transacts business nationwide, including in the state of California

## JURISDICTION

8. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties, as each of the Plaintiffs is a citizen of California, and Defendant Scottsdale is a citizen of Ohio and Arizona, for purposes of diversity jurisdiction.

10. The amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and in addition to other and further relief, declaratory relief is sought.

**VENUE**

11. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District.

12. This complaint concerns a contract for liability insurance sold by Scottsdale, which was created and received in the Central District of California.

13. On information and belief, Scottsdale is an insurance company licensed to sell and actively selling insurance policies in California, including the Central District of California.

14. Scottsdale sold the insurance policy at issue in this case to a business in Los Angeles, California, where the policy was received.

15. The Scottsdale policy at issue was intended to cover Plaintiffs' business operations throughout California, including the Central District of California, as well as throughout the United States.

16. The alleged wrongful conduct described in the underlying complaints in the Kahn Action purportedly occurred within the Central District of California.

17. The performance required under the Scottsdale policy at issue, including, without limitation, the payment of attorneys' defense fees, occurred within the Central District of California, as the underlying Kahn Action has been filed in Los Angeles Superior Court.

## THE SCOTTSDALE POLICY

18. Scottsdale sold a Business and Management Indemnity Policy No. EKS3235349 (the "Policy") to the named insured, Web Design & Consulting Services Inc. ("WDCS"), for the Policy Period from October 9, 2017 to October 9, 2018. [**Ex. 1, Policy, Declarations**]

19. The Policy's Continuity Date is October 9, 2015. [**Policy, Declarations, Item 3**]

20. The Policy's Insuring Clauses provide, in pertinent part, as follows:

    A.   **INSURING CLAUSES**

        1.   **Employee Insuring Clause**

**Insurer** shall pay the **Loss** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period,** and reported to the **Insurer** pursuant to Section E.1. herein, for an **Employment Practices Wrongful Act** taking place prior to the end of the **Policy Period**. [**Policy § A.1.**]

                             \* \* \* \*

        3.   **Wage and Hour Claim** Insuring Clause

**Insurer** shall pay the **Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally obligated to pay by reason of a **Wage and Hour Claim** first made against the **Insureds** during the **Policy Period** or, if elected, the **Extended Period,** and reported to

the **Insurer** pursuant to Section **E.1.** herein, for a **Wage and Hour Wrongful Act** taking place prior to the end of the **Policy Period**. [**Policy § A.3; Endorsement No. 20**]

21. The Policy includes the following pertinent Definitions:

    4. **Employees** means any person who was, now is or shall become:

        a. a full-time or part-time employee of the **Company,** including interns, voluntary, seasonal and temporary employees,

        b. any individual who applies for employment with the **Company,** and

        c. any natural person who is a leased employee or is contracted to perform work for the **Company,** or are independent contractors for the **Company,** but only to the extent such individual performs work or services for or on behalf of the **Company**[.] [**Policy § B.4.; Endorsement No. 2**]

    5. **Employment Practices Claim** means:

        a. a written demand against an **Insured** for damages or other relief;

        b. a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom . . .

brought by or on behalf of an **Employee** in their capacity as such. [**Policy § B.5**]

6. **Employment Practices Wrongful Act** means any actual or alleged:

* * * *

    d.    wrongful discharge or termination of employment, whether actual or constructive;

    e.    breach of an actual or implied employment contract;

    f.    wrongful deprivation of a career opportunity, wrongful failure or refusal to employ or promote, or wrongful demotion[.] [**Policy § B.6**]

* * * *

10. **Loss** means the damages, judgments, settlements, front pay and back pay, pre-judgment or post judgment interest awarded by a court, and **Costs, Charges and Expenses** incurred by any of the **Insureds. Loss** does not include:

* * * *

    e.    amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

* * * *

    i.    any amount owed as wages to any **Employee,** other than front pay or back pay [.] [**Policy § B.10**]

* * * *

**Wage and Hour Wrongful Act** means any actual or alleged violation(s) of:

    a. the Fair Labor Standards Act or any other federal, state or local laws, rules or regulations governing or relating to:

        i. the classification of **Employees** for the purpose of determining **Employees'** eligibility for compensation; or

        ii. the payment of wages, including but not limited to the payment of overtime, minimum wages, on-call time, the donning and doffing of uniforms, rest and meal periods, reimbursement of expenses, and any other earnings, tips, reimbursement or compensation of **Employees;**

    b. unfair business practices, unfair competition, conversion or public policy concerning, relating or arising out of any actual or alleged violations of those matters referenced in paragraph a.i. or a.ii. above.

However, **Wage and Hour Wrongful Act** shall not include actual or alleged violations of the Equal Pay Act of 1963, and any amendments thereto.

**Wage and Hour Claim** means:

    a. a written demand against an **Insured** for damages or other relief; or

      b.    a civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against an **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom; brought by or on behalf of one or more **Employees** solely alleging any **Wage and Hour Wrongful Act**. [**Policy § B; Endorsement No. 20**]

22.    The Policy provides as follows with respect to who is an "Insured" under the Policy:

    2.    **Company** means:

        a.    the **Parent Company;** and

        b.    any **Subsidiary**[.] [**Policy (General Terms) § B**]

\* \* \* \*

    7.    **Parent Company** means the entity first named in Item **1.** of the Declarations. [**Policy (General Terms) § B**]

\* \* \* \*

    11.    **Subsidiary** means:

        a.    any entity of which more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of such entity's directors or managers are owned by the **Parent Company,** directly or indirectly, if such entity:

        i.      was so owned on or prior to the inception date of this **Policy;** or

        ii.     becomes so owned after the inception date of this **Policy;** and

   b.    any joint venture entity in which the **Parent Company,** or an entity described in a. above, has an exact fifty percent (50%) ownership of the interests of such joint venture entity and where, pursuant to a written joint venture agreement, the **Parent Company** or entity described in a. above solely controls the management and operations of such joint venture entity. [**Policy (General Terms) § B**]

                \* \* \* \*

7.   **Insured Persons** means all persons who were, now are or shall become:

   a.    a director, officer, member of the management board, or management committee member of the **Company;**

   b.    any **Employee;** and

   c.    the functional equivalent of a director, officer or **Employee** in the event the **Company** is incorporated or domiciled outside the United States.

8.   **Insureds** means the **Company** and any **Insured Persons**. [**Policy § B; Endorsement No. 3**]

23. Under these provisions, each of the Plaintiffs is an Insured under the Policy:

    a.    WDCS is the named insured under the Policy.

    b.    Ad.com is a qualified subchapter S subsidiary ("QSub") of WDCS.

    c.    Cheap Stuff is a QSub of WDCS.

    d.    Local Pages is a QSub of WDCS.

    e.    Avi Bibi is an employee and the principal of WDCS.

    f.    Danny Bibi is an employee of WDCS.

## THE UNDERLYING KAHN ACTION

24. On February 9, 2018, claimant Robert Kahn ("Kahn") filed his complaint (the "Kahn Complaint") against Plaintiffs in the action styled as *Kahn v. Ad.com Interactive Media, Inc., et al.*, Los Angeles Superior Court Case No. BC693661 (the "Kahn Action"). [**Ex. 2**]

25. Kahn thereafter filed a First Amended Complaint (the "Kahn FAC") on March 19, 2018. [**Ex. 3**]

26. The Kahn Complaint and the Kahn FAC generally allege that Plaintiffs failed to reimburse Kahn for all of the work that Kahn performed for Plaintiffs in connection with an earlier lawsuit between Plaintiffs and Yahoo, designated the "Yahoo Matter" or the "Yahoo Action." [**Ex. 2** ¶ 1; **Ex. 3** ¶ 1]

27. The Kahn FAC alleges against Plaintiffs causes of action for breach of contract, account stated, for services rendered, and quantum meruit, and declaratory relief. [**Ex. 3** ¶¶ 31-51]

28. Pertinent allegations from the Kahn FAC include:

    1.    This Complaint is brought by Plaintiff seeking payment for services rendered and costs incurred by Plaintiff in connection with his representation of Ad.Media, Cheap Stuff, Local Pages, Avi, and Danny in the matter Cheap Stuff, Inc., et al v. Microsoft Corporation, et al., a case

before the Los Angeles County Superior Court, bearing the case No. EC062557 (hereinafter the "Yahoo Matter") . . . .

* * * *

25. On or about September 22, 2016, AdMedia, Cheap Stuff, Local Pages, Avi and Danny filed a lawsuit in the United States District Court- Central District of California against Great American. This case was identified as Case No. 2: 16-cv-7150-MWF-GJS (hereinafter referred to as "Great American Matter"). . . .

26. One of the issues litigated in the Great American Matter was whether Plaintiff was owed payment for services rendered for his representation of AdMedia, Cheap Stuff, Local Pages, Avi and Danny in the Yahoo Matter.

27. On or about August 27, 2017, Plaintiff sat for a deposition noticed in the Great American Matter, and testified about his involvement in the Yahoo Matter, in part to establish the legitimacy of his claims for payment (reimbursement) under the Policy. . . .

* * * *

29. . . . . A true and correct copy of the relevant 2 pages from Plaintiffs deposition transcript is attached to this Complaint as Exhibit "C".

29. For the years 2014 through 2016, Ad.com and WDCS completed and submitted for Kahn federal W2 employment forms, reflecting his employment by Ad.com and WDCS.

1  30. On August 23, 2017, Kahn was deposed in the Great American Action
2 (the "Kahn Deposition"). [**Ex. 4**] Relevant examples of Kahn's deposition testimony
3 include, without limitation, the following:
4  a. Kahn's deposition testimony contains repeated factual assertions
5 reflecting his status as an employee of Ad.com at all relevant times.

6  Q  So when did you start working with AdMedia?
7  A  I started working with them in August of 2014.
8  Q  And how did that come about?
9  A  I answered an ad, they were looking for an
10 in-house attorney. [*Id.* at 12:15-19]
11   \* \* \* \*
12  Q  Okay. And what was -- were -- were you hired
13 as an employee of AdMedia?
14  A  At the time I was hired to do in-house work.
15  Q  Yeah, what do you mean by that?
16  A  When we first met and talked -- we were
17 talking about in-house work and I would be hired as an
18 in-house attorney. He then within a couple of days
19 essentially mentioned there was -- he had mentioned a
20 litigation, but it wasn't really germane I guess to
21 becoming an employee. [*Id.* at 13:10-19]
22   \* \* \* \*
23  Q  And so you -- did you remain a salaried -- on
24 the payroll employee for some period of time?
25  A  I did. . . . [*Id.* at 14:16-19]
26  b. Kahn also testified at the Kahn Deposition that in addition to
27 himself, other Ad.com employees worked on the Yahoo Action for Ad.com [*Id.* at
28 **20:10-21:6, 46:9-10**], including employees that Ad.com "hired specifically to help

[Kahn] with the litigation." [*Id.* at 21:7-9] For example, Kahn described Ad.com's hiring of Elaine Berman, whom Kahn stated "was essentially being hired to help [him] with the Yahoo litigation" [*Id.* at 46:9-10], as an Ad.com employee:

> Q      So in what -- whatever Ms. Berman did was as an employee of AdMedia; is that your understanding?
>
> A      That was my understanding.
>
> Q      Not as an employee of Rob Kahn law, correct?
>
> A      She was not my employee. [*Id.* at 50:9-10]

**A.**   Kahn further testified that the services he performed for Ad.com were done at Ad.com's offices, where he would interact and work with other Ad.com employees on issues relating to the Yahoo Action. [*Id.* at 23:17-24]

c.   Kahn also testified that he signed pleadings and other documents filed in the Yahoo Action on behalf of Ad.com in his capacity as an employee of Ad.com.

> Q      Did you ever -- when you were -- the court documents that I've seen from your tenure at -- at AdMedia that were filed on behalf of the AdMedia's companies, I guess it was Cheap Stuff were filed as Robert S. Kahn Ad.com interactive media, was there a reason that you did it that way rather than Rob Kahn law?
>
> A      Yeah, I had subbed in and through my private practice but when I was doing the pleadings because I was working in the office pretty much on a regular basis, I just felt it was easier for everyone to just sit there and understand that I was in the office. [*Id.* at 28:3-14]

**SCOTTSDALE'S DENIAL OF COVERAGE FOR THE KAHN ACTION**

31. Plaintiffs tendered the Kahn Action to Scottsdale on or about March 2, 2018. [**Ex. 5**]

32. Scottsdale acknowledged receipt of the tender of the Kahn Action on or about March 6, 2018. [**Ex. 6**]

33. On March 13, 2018, Scottsdale requested information from Plaintiffs in connection with its investigation of the claim for coverage of the Kahn Action, namely **(a)** the relationships between each of the Plaintiffs and WDCS, the named insured under the Policy; and **(b)** "proof" of Kahn's employment, including W2s for the period when he was an employee. [**Ex. 7**]

34. On March 20, 2018, Plaintiffs provided via letter the information Scottsdale requested. Plaintiffs' March 20 letter explained the relationships between each of the Plaintiffs and WDCS, and provided copies of Kahn's W2 forms with Ad.com and WDCS. [**Ex. 8**]

35. On March 27, 2018, Scottsdale issued a three-page letter denying coverage for the Kahn Action. [**Ex. 9**] Scottsdale's March 27 disclaimer of coverage was based on its determinations that **(i)** notwithstanding the W2 forms indicating Kahn was an employee of Ad.com, in the Kahn Action, Kahn "is not bringing the Complaint is his capacity as an Employee of Ad.com;" and **(ii)** its conclusory assertion that the claims alleged in the underlying Complaint "are not Employment Practices Wrongful Acts." [*Id.* at 3]

36. On May 4, 4018, Plaintiffs sent Scottsdale a letter requesting that Scottsdale reconsider its denial of coverage. [**Ex. 10**]

37. On May 11, 2018, Scottsdale requested a copy of the complete deposition transcript for the deposition of Kahn in the Great American Action, a partial copy of which was attached as Exhibit "C" to the Kahn Complaint and Kahn FAC. [**Ex. 11**]

38. Plaintiffs provided a copy of the Kahn deposition transcript to Scottsdale on June 6, 2018. [**Ex. 12**]

39. On June 19, 2018, Scottsdale sent Plaintiffs a letter confirming its earlier denial of coverage for the Kahn Action. [**Ex. 13**]

40. Scottsdale's June 19 letter characterizes Kahn's claims in the Kahn Action as reflecting his "services as outside counsel representing Web Design" in the Yahoo Action. [*Id*. **at 1**]

41. Scottsdale's June 19 also purports to apply a multi-factor test for determining whether an individual is an employee or an independent contractor. [*Id*. **at 2-4**]

42. Scottsdale's June 19 letter, however, nowhere mentions or discusses any testimony provided by Kahn during the Kahn Deposition, a transcript of which Plaintiffs provided to Scottsdale nearly two weeks earlier, on June 6, 2018.

**THE KAHN ACTION ALLEGES POTENTIALLY COVERED CLAIMS**

43. The Kahn Action, as clarified by the extrinsic evidence, alleges, or potentially alleges, an Employment Practices Claim made against Plaintiffs for an Employment Practices Wrongful Act that took place within the Policy Period.

44. Kahn was, at all relevant times, an employee or former employee of Ad.com.

45. Kahn alleges, or could potentially allege based on the known facts, one or more Employment Practices Wrongful Acts as defined in the Policy, including, without limitation, a claim for breach of an actual or implied employment contract.

46. The Kahn Action, as clarified by the extrinsic evidence, also alleges, or potentially alleges, a Wage and Hour Claim made against Ad.com for a Wage and Hour Wrongful Act that took place within the Policy Period.

47. Kahn alleges, or could potentially allege based on the known facts, one or more Wage and Hour Wrongful Acts as defined in the Policy, including, without limitation, for violation of the California Labor Code provision governing or relating to the payment of wages.

48. Based on the underlying factual allegations and the otherwise known facts, Scottsdale owes a duty to defend Plaintiffs in the Kahn Action.

## FIRST CAUSE OF ACTION

### Declaratory Relief – Duty to Defend

49. Plaintiffs, by this reference, incorporate each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged herein.

50. By issuing and delivering the Policy, Scottsdale agreed to provide a defense for suit alleging, among other things, claims for breach of employment contracts or for violation of state laws governing or relating to the payment of wages. Scottsdale agreed to pay for Plaintiffs' defense costs in such suits.

51. Scottsdale is obligated under the Policy to pay attorneys' fees and costs that Plaintiffs incur in the defense of the Kahn Action.

52. Scottsdale breached its duty to Plaintiffs by failing to provide and pay for a defense in the Kahn Action.

53. Plaintiffs have fully performed all of the obligations and conditions to be performed by them under the Policy and/or have been excused from performing the same as a result of Scottsdale's breach of its duty to defend.

54. An actual bona fine controversy exists between Plaintiffs, on the one hand, and Scottsdale, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties. Namely, the parties disagree about whether Scottsdale has a duty to defend Plaintiffs in the Kahn Action and to pay all of the attorneys' fees and costs Plaintiffs have incurred and will incur to defend that lawsuit.

## SECOND CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

55. Plaintiffs, by this reference, incorporate each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged herein.

56. Under well-established California law, a carrier must consider not just the factual allegations set forth in the underlying pleadings, but also any other

available facts or extrinsic evidence, in determining whether a duty to defend is triggered.

57.   To avoid coverage, insurers must produce undisputed factual allegations or extrinsic evidence that conclusively establishes that there is no potential for coverage under the policy.

58.   Scottsdale owes Plaintiffs, and each of them, a duty of good faith and fair dealing.

59.   Scottsdale, in denying coverage for the Kahn Action, has willfully and/or unreasonably ignored extrinsic evidence supplied to it that evidence potentially covered claims under the Policy.

60.   Scottsdale requested and received copies of W2 forms indicating Kahn's status as a former employee of Ad.com and/or WDCS, and a copy of the Kahn Deposition transcript, which contains multiple instances of factual assertions and testimony indicating Kahn's status as an employee of Ad.com and WDCS.

61.   In deciding to deny coverage for the Kahn Action, Scottsdale either entirely ignored, failed to account for, failed to address, or otherwise failed to appropriately credit the available extrinsic evidence indicating potential coverage based on facts reflecting Kahn's status as a former employee of Ad.com and/or WDCS and the potential for Kahn to allege covered claims based thereon.

62.   Scottsdale has refused to defend the Kahn Action, despite requesting more information from Ad.com, indicating there is doubt as to whether the allegations in the Kahn Complaint and FAC establish the existence of a defense duty. Such doubt must be resolved in favor of Ad.com's contention that there is a duty to defend, yet Scottsdale unreasonably disclaimed its duty to defend, in contravention of well-settled law.

63.   Scottsdale's failure to acknowledge its duty to defend the Kahn Action is not in accord with its duty of good faith and fair dealing, including because there is no colorable basis for Scottsdale's coverage position.

64. Scottsdale's breach of the covenant of good faith and fair dealing has harmed Plaintiffs, in an amount to be proven at trial.

65. As a result of Scottsdale's breach of the covenant of good faith and fair dealing, Plaintiffs are entitled, among other relief, to recover their reasonable attorneys' fees and costs in bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Scottsdale as follows:

1. A judicial declaration that Scottsdale had and has a duty to defend Plaintiffs (and to pay their defense costs) under the Policy against the claims asserted in the Kahn Action.

2. A judicial declaration that Scottsdale must promptly pay to Plaintiffs all attorneys' fees and costs incurred by Plaintiffs in defense of the claims asserted in the Kahn Action.

3. An award of Plaintiffs' reasonable attorneys' fees and costs incurred in this lawsuit.

4. An award of pre-judgment interest at the statutory rate.

5. For the total costs of the suit herein.

6. For such other and further relief as the Court may deem just and proper.

Dated: August 1, 2018                    **GAUNTLETT & ASSOCIATES**

By: /s/ David A. Gauntlett
    David A. Gauntlett
    Eric D. Mason

Attorneys for Plaintiffs
AD.COM INTERACTIVE MEDIA, INC., CHEAP STUFF, INC., LOCAL PAGES, INC., AVI BIBI, and DANNY BIBI

231816_11.doc--8/1/2018 1:31 PM